UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| D.W., by his mother and next friend, ) | |
| TONIA WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:11:0064 |
| ) | Judge Sharp |
| KATHRYN O'DAY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court is the Motion to Dismiss filed by Defendants Kathryn O'Day, Commissioner, Tennessee Department of Children's Services ("DCS") and William Haslam, Governor of the State of Tennessee. Plaintiff has filed a response in opposition to the Motion (Docket No. 9), to which Defendants have replied (Docket No. 11). For the following reasons, the Motion to Dismiss will be granted because Plaintiff has not shown a justiciable case or controversy under Article III of the United States Constitution.

## I. FACTUAL BACKGROUND

Plaintiff D.W., a thirteen year old boy, brings this action through his mother, Tonia Wright ("Wright"), as a result of his being identified as an "indicated perpetrator" of child abuse by DCS. The relevant facts are as follows:

On May 12, 2010, Lorra Lindsay ("Lindsay"), a DCS case manager, telephoned Wright and asked her to bring D.W. to the DCS office in Jamestown, Tennessee for questioning in regard to allegation raised by or about L.M., another child. Wright, with D.W. in tow, reported as instructed

1

and met with Lindsay and Officer George Wyatt of the Fentress County Sheriff's Department.

Upon being informed that D.W. was alleged to have "'pushed on' L.M.'s penis" and to have "stuck his finger up his (L.M.'s) 'butt,'" (Complaint, Docket No. 1 ¶ 6), Wright denied the allegations, as did D.W. in a separate, private interview. After the interviews, Lindsay informed Ms. Wright that DCS "would do nothing more because there was nothing the Department could do." (Id. ¶ 11).

On June 17, 2010, Lindsay delivered to D.W. a certified letter informing him that he was indicated as a perpetrator of child abuse, and was entitled to a formal file review. The letter stated the decision was based upon "information gathered and the findings of the investigation," but did not further elaborate on the findings or information. (Id. ¶ 12). Wright asked Lindsay to arrange a hearing before a judge relating to the findings, but Lindsay stated "there was not enough evidence for the case to go before a judge." (Id. ¶ 14).

Subsequently, D.W., through counsel, requested a formal file review and submitted affidavits and statements which indicated that L.M. had provided inconsistent stories in the past regarding alleged abuse. On July 6, 2010, DCS acknowledged receipt of the request for review, and advised D.W. that he had the right to submit additional evidence.

On February 23, 2011, DCS informed D.W. by letter that the formal file review resulted in the indication for child sexual abuse being upheld. After counsel requested an administrative hearing regarding the decision to uphold the indication, DCS informed D.W. that "he did not qualify for an administrative hearing because the indication did not affect his employment." (Id. ¶ 21). To date, DCS has "never informed D.W. of the evidence against him." (Id. ¶ 18).

Based on these events, D.W. filed suit in this Court under 42 U.S.C. § 1983. For his "Cause

of Action," Plaintiff states that "[t]he Defendants' actions in listing him on the Tennessee Department of Children's Services Child Abuse Registry deprived D.W., without adequate procedural protections, of his constitutionally protected liberty interest in pursuing the common occupations of life." (Id. ¶ 65). He seeks both injunctive and declaratory relief.

Specifically, Plaintiff requests that Tenn. Comp. R. and Regs. 0250-7-9 be declared unconstitutional. He also requests that DCS be enjoined from listing him on the Child Abuse Registry and be ordered to remove his name from the registry, or, alternatively, that DCS be ordered "to reserve the decision to list Plaintiff on the registry and to fully advise Plaintiff of the allegations made against him, the reason(s) why Defendant chose to indicate him and place his name on the Child Abuse Registry, and the evidence against him, and in addition, provide a full and fair hearing before a neutral and detached hearing officer wherein Plaintiff may present his defense." (Id. at p. 8 subparagraphs 1 & 2).

## II. APPLICATION OF LAW

Defendants argue that Plaintiff has not alleged a justiciable case or controversy and that they have not deprived D.W. of a constitutional right. Because the Court agrees with Defendants' first argument, it does not reach the merits of Plaintiff's liberty interest claim.

The Court's power to adjudicate is limited to "cases and controversies" under Article III. U.S. Const., art. III, § 2, cl. 1. "In limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo–American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law." Summers v. Earth Island Inst., 555 U.S. 488, 492 (2009).

Defendant argues that Plaintiff lacks standing to bring suit. Defendant also argues that, at least

3

to the extent that Plaintiff is challenging the interplay between Tenn. Code Ann. § 71-3-507 and Tenn. Comp. R. and Regs. 0250-7-9, the same is not ripe for judicial review. While there is some overlap in the arguments, "where the only Article III question concerns the imminence of the plaintiff's injury, standing analysis parallels ripeness analysis." Thomas More Law Ctr v. Obama, 651 F.3d 529, 537 (6th Cir. 2011).

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "It requires federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" Summers, 555 U.S. at 493 (quoting, Warth v. Seldin, 422 U.S. 490, 498-99 (1975)).[1]

In addition to standing, Plaintiff must establish that the controversy between the parties is ripe for review because ripeness, like standing, "originate[s] in Article III's 'case' or 'controversy' langauge[.]" DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006). Just as with standing, "[t]he ripeness doctrine ensures that a dispute is concrete and real before the judicial branch resolves it." Carey v. Wolnitzek, 614 F.3d 189, 196 (6th Cir. 2010).

Plaintiff claims that DCS's identification of him as an indicated sex offender brands him with a "scarlet letter." (Docket No. 9 at 5). He concedes as he must, however, "that damage to one's reputation without more does not implicate a liberty interest protected by the Fourteenth Amendment." (Id. at 7).

---

[1] Standing must exist at the time of filing of the complaint." Cleveland Branch, N.A.A.C.P. v. City of Parma, 263 F.3d 513, 524 & 526 (6th Cir. 2001). The complaint is construed in plaintiffs' favor for purposes of determining standing, and all material allegations are accepted as true. Courtney v. Smith, 297 F.3d 455, 459 (6th Cir. 2002); Greater Cincinnati Coalition fo the Homeless v. City of Cincinnati, 56 F.3d 710, 715 (6th Cir. 1995).

4

The Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States," and "the procedural guarantees of the Due Process Clause cannot be the source of such law." Paul v. Davis, 424 U.S. 693, 701 (1976). Indeed, "[t]he frequently drastic effect of the 'stigma' which may result from defamation by the government . . . does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural due process protection of the Due Process Clause." Id. at 701. Rather, what has been labeled as "[t]he stigma-plus test is used to determine whether state action violates an individual's procedural due process rights." Doe v. Michigan Dept. of State Police, 490 F.3d 491, 502 (6th Cir. 2007). Thus, for there to be a procedural violation of a liberty interest through the state's alleged mislabeling of an individual, there must be an injury to that individual's reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus). See, id.; Brown v. Montoya, 662 F.3d 1152, 1167-70 (10th Cir. 2011) (discussing Paul and the stigma-plus test in detail).

In this case, Plaintiff claims that DCS's action in identifying him as an indicated child abuser not only damaged his reputation by placing a "scarlet letter" on him, it also affected a tangible interest – his right to employment in the child care/adult care field. He argues:

> On June 16, 2010 the Plaintiff enjoyed the right to pursue any of the common occupations of life – including child care and adult daycare. In addition, he enjoyed the right to pursue licensure to operate a child care center. Those rights are forever lost to him. The Defendants stripped all of these rights from him on June 17, 2010 when they conferred upon him the status of an indicated perpetrator of child abuse, without due process of law. In addition, this status impairs Plaintiff's employment prospects with several state agencies and persons or entities that contract with the state.

(Docket No. 9 at 11).

5

Even assuming that being identified as an indicated child abuser under Tenn. Comp. R. and Regs. 0250-7-9 and its allegedly consequent limitation on employability amounts to the deprivation of a liberty interest,[2] Plaintiff has failed to show that, at present, he has a justiciable case or controversy against Defendants. This is true whether viewed in terms of standing, or ripeness.

Plaintiff seeks injunctive and declaratory relief, but to have standing to seek such relief, "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers, 555 U.S. 493 (citing, Friends of Earth, Inc. v. Laidlaw Env't Serv., Inc., 528 U.S. 167, 180–181 (2000)). Thus, an essential component of standing is the demonstration of "actual present harm or a significant possibility of a future harm." Fieger v. Ferry, 471 F.3d 637, 643 (6th Cir.2006); see, City of Los Angeles v. Lyons, 461 U.S. 95, 107 n.8 (1983) ("It is the reality of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions. The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant"). Similarly, the ripeness doctrine is "[d]esigned to ensure that the federal courts resolve 'existing, substantial controversies,' Norton v. Ashcroft, 298 F.3d 547, 554 (6th Cir. 2002), not disputes 'anchored in future events that may not occur as anticipated' or may not

---

[2] See, Burt v. Miller, 2010 WL 3521752 at *12 (E.D. Tenn. Sept. 7, 2010) (quoting Gregory v. Hunt, 24 F.3d 781, 788 (6th Cir.1994) for the proposition that "a charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation," and holding that, even though charges of child sexual abuse were lodged against plaintiff limiting his employment prospects, a "'definite range of opportunity' remains open to plaintiff despite these charges," and "Plaintiff thus has failed to identify a liberty or property interest sufficient to trigger the protections of the Due Process Clause of the Fourteenth Amendment."

6

occur 'at all,' Nat'l Rifle Ass'n of Am. v. Magaw, 132 F.3d 272, 284 (6th Cir.1997)[.]" Carey, 614 .3d at 196. To meet the burden of showing that a claim is ripe for review, a plaintiff "must show (1) that 'the claim [is] fit ... for judicial decision in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass' and (2) that 'the hardship [to him] of withholding court consideration' outweighs the costs of allowing 'litigation by hypothetical[.]'" Connection Distrib. Co. v. Holder, 557 F.3d 321, 342 (6th Cir. 2009).

Plaintiff has not demonstrated the existence of a present controversy. Rather, his alleged denial of a liberty interest is anchored in future events and the possibility of future harm.

Plaintiff is thirteen years old, and he does not claim that he is presently applying for employment or licensing in the child care/adult care fields. Alot can change in the half-decade or so before Plaintiff reaches his majority and/or chooses to apply for a job regulated by Tenn. Comp. R. and Regs. 0250-7-9. As Defendants point out, the law may change, and Plaintiff may not be interested in pursuing an occupation in the affected fields. Further, it is not clear that one of tender years who has been identified as an indicated perpetrator of child abuse will be barred from employment in the affected fields upon reaching adulthood.

Defendant also argues that Plaintiff's claim is premature because within "two years, when the plaintiff is only fifteen, DCS will not release information regarding his being listed as indicated on the child abuse registry," and cites for this provision the following state regulation:

> If the Department does not bring procedures to release the identity and other related information of a perpetrator in an 'indicated' report of abuse . . . within two years of the initial classification, the Department shall not release any information as to that report. This provision shall not, however, require expunction of this information from the Department's internal records.

Tenn. Comp. R. and Regs. 0240-7-9-.03(5). Plaintiff insists Defendants' reliance on that regulation

7

is misplaced because "Tenn. Code Ann. § 71-3-507 provides *no person* whose records demonstrate that he is an indicated perpetrator of child abuse may be employed with a child care agency .. . and *no person* known to the management of a child care agency as a perpetrator of child abuse may be employed by a child care agency[.]" (Docket No. 9 at 5, italics in original).

This interplay between the regulations and statute appears to be at the heart of this case. Even so, and even if DW is correct in his reading of the statute, he has not shown that there presently exists a justiciable case or controversy between the parties.

The statute on which DW relies requires that applicants for positions in the regulated childcare/adult care fields "complete a disclosure form in a manner approved by the department disclosing," among other things, his or her status "as an indicated perpetrator of abuse or gross neglect in the records of the department of children's services and the department of human services[.]" Tenn. Code Ann. § 71-3-507(a)(1). Plaintiff has not yet been required to complete any such disclosure and will not be required to do so until such a time as he applies for a position in the affected fields, assuming that is his desired vocation and assuming that the law remains as CW construes it. These facts simply do not suggest a present case or controversy over which this Court has jurisdiction.

### III. CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss be granted and this case will be dismissed for lack of a justiciable case or controversy under Article III of the United States Constitution.

8

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE